# CASES

# SUPREME JUDICIAL COURT

### COUNTY OF WALDO, JULY TERM, 1838.

---

### HOLLIS MONROE *vs.* JAMES CONNER *& al.*

If one partner give actual notice, that he will not be holden as partner, he is not bound for debts contracted by another partner, after such notice, without his consent.

EXCEPTIONS from the Court of Common Pleas, PERHAM J. presiding.

Assumpsit against *James Conner* and *William Coleman.* *Conner* lived at *Gardiner,* and owned a carding and fulling mill at *Unity.* The business of carding wool and dressing cloth, was carried on at that mill by *Coleman,* and the articles charged were furnished by the plaintiff, and delivered at the mill. The plaintiff claimed to recover against both, on the ground, that *Conner* and *Coleman* were partners in the business carried on at that mill. No articles of copartnership were produced, or proved to have been made, and the plaintiff relied on other evidence tending to prove the partnership. *Conner* denied the partnership, and offered evidence tending to prove, that he had given notice to the plaintiff, that he would not be holden on any contracts made by *Coleman.* The counsel for *Conner,* requested the Judge to instruct the jury, that if *Conner* notified the plaintiff's agent, who delivered all the articles, before the delivery, that he, *Conner,* would not be holden for any thing, unless delivered by his order, then *Conner* is not holden for any thing delivered to *Coleman* after such notice. The Judge

Monroe v. Conner.

did not give this instruction, but did instruct them, that if from the evidence in the case, they were satisfied, that the defendants were copartners, such notice would not discharge *Conner* from further liabilities, unless he should show them that by the conditions of the copartnership, such power was reserved to *Conner*. At the request of *Conner's* counsel, the jury were directed to find, whether such notice was or was not given. The jury found a verdict for the plaintiff, and also found, that such notice had been given. *Conner* filed exceptions.

*Evans* argued for *Conner*, that where there is no express promise, as in this case, none can be implied against the express declarations of the party attempted to be charged. *Whiting* v. *Sullivan*, 7 *Mass. R.* 107. One partner may contract alone, and be alone responsible for articles used in the partnership business. *Sylvester* v. *Smith*, 9 *Mass. R.* 119. And on the same principle may refuse to be bound without his consent. If one partner expressly forbids the delivery of articles on joint account, he is not bound after such notice, even where the partnership is not dissolved. 3 *Kent's Com.* 45; *Collyer on Part.* 213, 214; 3 *Conn. R.* 124; 11 *East,* 264; 12 *Johns. R.* 409.

*W. G. Crosby*, for the plaintiff. One partner has the right to bind the firm to any extent, in contracts for the use of the partnership. *Man. & Mech. Bank* v. *Gore*, 15 *Mass. R.* 75; *Boardman* v. *Gore*, ib. 331. The better opinion is, that a notice like this does not exempt the party giving it from liability as a partner. The question is discussed, and the cases reviewed in *Gow on Part.* 75, note 3; 3 *Johns. Ch. R.* 400. But to avail himself of the defence, *Conner* should have gone further, and have shown, that the articles went to *Coleman's* private use. Being delivered at the mill, the presumption is, that the goods went to the use of the partners. *Etheridge* v. *Binney*, 9 *Pick.* 272; *Walden* v. *Sherburne*, 15 *Johns. R.* 422.

After advisement, the opinion of the Court was drawn up by

SHEPLEY J. — The question presented in this bill of exceptions is one of no inconsiderable importance in a mercantile community, and there is found to be some difference of opinion respecting it.

The general rule is, that the contract of one partner binds all, in transactions relating to the partnership ; and this rule prevails, when the partner making the contract applies the fruits of it to his own private use, if the contract is made in the usual course of business, and the appropriation be unknown to the other party to the contract. So one partner can make purchases ; and can sell, pledge, and assign the partnership goods ; and in these acts bind all the partners.

When a partnership becomes known and its course of dealing has been established, all are at liberty to regard one as acting for the benefit of all the partners in this accustomed course of dealing. If it were not so, there could be no safety in commercial contracts of this character. But the right of one partner to bind all rests upon the principle, that all have agreed, that he should do so.

This agreement is either expressed, or implied by law from the nature of the association, or from the customary course of dealing. There is nothing inconsistent with this rule in allowing one of the partners to dissolve the contract of partnership, giving due notice, that such power to bind him has ceased to exist. This he may, without doubt, do, where there is no special agreement, that the partnership shall continue for a definite period, which is yet unexpired. Whether one partner may dissolve the partnership before the agreed time expires, may admit of doubt. Upon principle however, it would seem, that it was only for the other party to that contract to complain, it being of no importance to others, whether they violate contracts between themselves, if full notice is given, so that others may understand to whom they are to give credit. *Kent* evidently inclines to the opinion, that the dissolution may take place. 3 *Com.* 54. And such is the law in *New-York.* 17 *Johns. R.* 525; 19 *Johns. R.* 538 ; while the law would appear to be different in *England.* 16 *Vesey,* 56 ; 1 *Swanst.* 495. It does not, however, become necessary to express any opinion upon this point, as there is no proof in the present case, that the partnership was formed for any definite period. In such cases it is admitted, that one partner may by notice dissolve ; and thus prevent those having such notice from making further contracts to bind the partnership. If such a power exist, as to all persons, it would be difficult to deny, that one partner could protect himself against a

Monroe *v.* Connor.

particular contract by actual notice, that he dissented from it, before it was concluded. Such a notice removes the foundation upon which the right rests, to charge all the partners upon the contract of one. It leaves no longer the presumption, that one acts for all, by the consent of all. And if, after such actual notice, a person will give credit, he cannot reasonably complain, that he cannot obtain payment from him, who has notified him not to give the credit. The only difficulty arises in relieving the partner giving such notice from the payment, when the fruits of the contract have been enjoyed by the partnership of which he still continues to be a member. In *Willis* v. *Dyson,* 1 *Stark. R.* 164, *Ld. Ellenborough* held, that " it would be necessary for the party sending goods after such notice, to prove some act of adoption by the partner who gave the notice, *or that he had derived some benefit from the goods." Gow* states, 69, that " to recover in an action for goods sold after such countermand, he must show, that the sale was adopted by the dissentient partner, *or that he derived a benefit from the delivery."* *Kent, vol.* 3, 45, remarks, " that the seller must show a subsequent assent of the other partners, or that the *goods came to the use of the firm."* Both these jurists refer to the case of *Willis* v. *Dyson* as authority. It is quite obvious, that there may be a difference between the goods coming to the use of the firm, and a benefit derived to the dissenting partner from their delivery to the firm. The bargain may have proved to be a very losing one, and this may have been foreseen by the dissenting partner, and have been the very cause of the notice ; and why should he be held to pay, perhaps from his private property, for goods the purchase and sale of which may have absorbed the whole partnership stock, when he had provided against such a calamity by expressing his dissent from the contract before it was consummated ?

In the case of *Galway* v. *Matthew & al.* 10 *East,* 264, one partner, after the other partner had given notice of his dissent, signed a note with the name of the partnership, and received the money and applied most of it to the payment of the partnership debts ; and the decision was against the right to charge the dissenting partner.

In the case of *Leavett* v. *Peck*, 3 *Conn. R.* 124, the fruits of the contract went to the partnership, and yet the dissenting partner was held not to be liable.

*Gow* states, that in negotiable instruments, one partner cannot bind another, who dissents, and gives notice of it; and alludes to no qualification, where the fruits of the contract are applied to the use of the partnership. *Gow*, 65. *Collyer*, 214, says, "it seems also, that the mere disclaimer by one partner of the future contracts of his copartner will be binding on third persons, whatever be the effect of such an act between themselves, or whether it be, or be not in conformity to the partnership agreement." He afterwards also states the case of *Willis* v. *Dyson*, in the language of the Court. *Kent*, after making the remark before stated, examines the cases, and as the result of it says, "it seems also to be the better opinion, that it is in the power of any one partner to interfere and arrest the firm from the obligation of an inchoate purchase, which is deemed injurious." This he could not do if he were bound by the goods coming to the use of the firm. It appears to be more in accordance with the general principles of law, and with good faith and fair dealing to hold, that a partner is not bound by a contract after he has given notice to the party proposing to make it, that he would not be bound by it.

*Exceptions sustained and new trial granted.*