T. T. WORD SUPPLY CO. v. BURKE et al.

No. 9816.

Court of Civil Appeals of Texas. Galveston.

Feb. 3, 1933.

Rehearing Denied March 2, 1933.

Andrews, Streetman, Logue & Mobley, T. M. Mobley, and Homer Mabry, all of Houston, for appellant.

York & Neeld, of Houston, for appellee Burke.

LANE, Justice.

T. T. Word Supply Company, a corporation, brought this suit against E. J. Burke and Joe F. Long, as individuals and jointly as parties composing a copartnership of E. J. Burke & Joe F. Long, to recover $1,200, the alleged purchase price of certain goods, wares, merchandise, and material, which plaintiff alleges it sold to the alleged copartnership.

The plaintiff alleged that such goods, merchandise, and materials were purchased and used for and on behalf of the copartnership.

Joe F. Long made no answer, nor was any answer made by the alleged partnership.

E. J. Burke by his answer denied under oath the existence of the alleged partnership. He averred that the account sued upon was neither just nor true in whole nor in part. He alleged that all business relations between himself and Joe F. Long were under and in pursuance of a written contract entered into between them, and that he never at any time authorized Joe F. Long to purchase any of the items contained in the account sued upon.

In the alternative, he says that if the court should find that there existed the partnership, as alleged by the plaintiff, then he says that he notified the plaintiff orally and in writing long prior to the sale of any of the items shown in said account not to sell or deliver any items or articles to Joe F. Long, unless and until the purchase of same had been approved by him; that all of the items shown in said account were sold and delivered to Joe F. Long without his knowledge, consent, or approval; that said items were sold and delivered to Joe F. Long by plaintiff on Long's personal credit, and that such items were solely used on a drilling rig owned and operated by Long for his own use and benefit, and that all of them are now in Long's possession, attached to his drilling rig, which is used for his exclusive benefit; that he (Burke) is in no way legally liable for the payment of the purchase price for said items.

The case was tried before the court without a jury. Upon the pleadings and evidence the court rendered judgment against Joe F. Long, E. J. Burke, and the alleged partnership, jointly and severally, for the sum of $519.28, the sum "oked" by Burke, in favor of the plaintiff, and he also rendered judgment in favor of plaintiff against Joe F. Long and the alleged partnership, jointly and severally, for the further sum of $645.25, same being for purchase not "oked" or approved by Burke.

Upon request therefor by the plaintiff, the court prepared and filed his findings of fact and conclusions of law with exhibits attached, as follows:

"Heretofore on the 18th day of July, 1930, E. J. Burke and Joseph Long, the defendants in the above entitled and numbered cause, entered into a partnership contract for the purpose of prospecting and drilling for oil and gas, said operations to be conducted in Nacogdoches county, Texas, and a copy of said contract and agreement is attached here-

to and marked Exhibit 'A.' That the defendants, E. J. Burke and Joseph Long, and each of them, immediately commenced to carry out the terms and provisions of said agreement and prosecuted the drilling of the well stipulated for in said contract up until about November 15, 1930. The plaintiff, T. T. Word Supply Company, furnished and delivered to said copartnership the various and sundry items mentioned in the accounts annexed to the plaintiff's petition and marked Exhibits 'A' and 'B' and the prices charged therefor were the usual, reasonable and customary prices and were the prices agreed upon as the purchase price thereof, all of which was delivered to the well being drilled by the said E. J. Burke and Joseph Long. On or about August 18, 1930, the defendant, E. J. Burke, in a telephone conversation with M. H. Albert, treasurer of plaintiff, T. T. Word Supply Company, notified the plaintiff and the said M. H. Albert 'not to sell Joe Long anything and expect me to pay for it. I would not be responsible for anything he purchased unless I oked the bill.' The plaintiff wrote E. J. Burke with reference thereto as shown by Exhibits 'B' and 'C' attached hereto. Burke did not reply to either letter. The plaintiff and the plaintiff's agents did procure from the said E. J. Burke his O. K. on some of the items which are specified in said account, totaling the sum of five hundred nineteen and 28/100 ($519.28) dollars. These items are as follows:

"Bill of 8/23/30 for $30.87.
"Bill of 9/27/30 for $42.12.
"Bill of 9/27/30 for $145.00.
"Bill of 8/19/30 for $68.00.
"Bill of 8/27/30 for $64.30.
"Bill of 10/24/30 for $14.76.
"Bill of 10/6/30 for $115.60.
"Bill of 10/1/30 for $38.63.

"That the balance of the items in the accounts Exhibit 'A' and 'B' attached to plaintiff's petition were not oked by E. J. Burke although plaintiff undertook to reach him for his O. K.

### "Conclusions of Law.

"The notice given by E. J. Burke to the plaintiff is sufficient to limit his liability to the items and bills which he oked and approved or ordered and he is not bound to plaintiff for the partnership debts further than such items.

"That plaintiff is entitled to recover the amounts set forth in the foregoing findings of fact from each and all of the defendants, but the defendant, E. J. Burke, is not liable for the balance of the account although the other defendants are so liable."

### "Exhibit 'A'

"The State of Texas, County of Harris.

"Know All Men by These Presents:

"That this contract and agreement entered into by and between E. J. Burke of Harris County, Texas, hereinafter referred to as First Party, and Joseph Long, also of Harris County, State of Texas, hereinafter referred to as Second Party.

"For and in consideration of the Second Party furnishing his oil well drilling equipment to drill one or more wells on the leases owned by First Party in the Northeastern portion of Nacogdoches County, Texas, the First Party agrees to give to the Second Party a one-half (1/2) interest in all the profits derived from the drilling of the well or wells and from the sale of all leases.

"First Party has entered into a contract with W. J. Tinkle, Trustee, to drill a well on leases that First Party is receiving from W. J. Tinkle, Trustee, and W. J. Tinkle individually, which leases aggregate ten thousand (10,000) acres, more or less.

"First Party has contracted with the Sloan Prospecting Company of Houston, Harris County, Texas, who has developed the above territory geophysically which contract between First Party and Sloane Prospecting Company, First Party agreed to give Sloane Prospecting Company one-fourth (1/4) of the leases he has, and which the Second Party herein agrees for him to do.

"The Second Party agrees to furnish his drilling equipment and to furnish his time and to use his best efforts to complete a well successfully for First Party, and to help First Party to carry out his contract with W. J. Tinkle, Trustee.

"The money to be used for the sinking of the well or wells to be derived from the sale of leases.

"The First Party and Second Party agree, mutually, to use their best efforts to sell the leases and neither party is to receive any compensation for the sale of the leases.

"The First Party has spent certain sums of money in securing the leases in this block of acreage, which aggregate about Five Thousand Dollars ($5,000.00) and the First Party has agreed to pay about Thirteen or Fourteen Hundred Dollars ($1300.00 or $1400.00) which is due on the Kyle Well. This is to be paid out of the sale of the leases.

"First Party agrees with the Second Party that from the sale of the leases, all expenses for the sinking of the well and for shipping the rig and equipment to Garrison and for the returning of the rig to Houston shall be paid from the sale of the leases.

"The First Party agrees that the rig and equipment shall be kept in good order and Second Party agrees and guarantees that the rig and all equipment is in first class condition and is ready to set up and begin operating.

"The First and Second Party are to receive not over Seven Hundred Fifty ($750.00) Dollars each per month for expense money during the operation and sinking of the well and

developing of the above territory. This expense money is to come out of the sale of the leases.

"As soon as enough leases are sold, First Party is to receive the money he has spent in securing and getting the block of acreage together.

· "If the well is a dry hole and the First Party decides to have another well sunk, then Second Party agrees to sink it, provided the money can be secured to do so from the sale of leases.

"After the well has been drilled or abandoned and First Party has completed his contract with W. J. Tinkle, Trustee, and First Party has received the money he has spent, then what monies are on hand from the sale of leases shall be divided fifty per-cent (50%) to First Party and Fifty per-cent (50%) to Second Party, and if the well is brought in, all the profits that are made are to be divided fifty per-cent (50%) to the First Party and fifty per-cent (50%) to the Second Party.

"The Second Party agrees that the First Party is to have the entire control and management of the sale of the leases.

"And the Second Party agrees to render to First Party any assistance he is able to and agrees that all monies received from the sale of leases shall be kept in the name of E. J. Burke and all bills for expense and labor shall be paid for out of this fund by First Party.

"Both parties are to have charge and supervision of the operation and development of the above leases and any contract that the First Party enters into is hereby agreed to by Second Party.

"Signed in duplicate, this the 18th day of July, A. D. 1930.

"[Signed]   E. J. Burke
        "E. J. Burke, First Party.
"[Signed]   Joseph Long
        "Joseph Long, Second Party."

"Exhibit 'B'

"August 18, 1930.

"Mr. E. J. Burke,
    "%E. J. Burke Co.,
    "4700 Lyons Ave.,
    "Houston, Texas.
"Subject: J. F. Long.
"Dear Mr. Burke:

"Confirming our telephone conversation of this morning, first of all we want to thank you very much indeed for the courtesy you have shown us in this matter.

"The thought has occurred to us, however, that in getting approval from you on each and every item that Mr. Long may need, that in some cases it might cause considerable inconvenience or delay, or it is likely that Mr. Long will need supplies at night, or even he may come by early in the morning before you could be reached over the telephone, and it

has occurred to us that to expedite matters, that you get an O. K. for, let us say, $250.00 to $500.00 worth of equipment more or less, whichever meets with your approval. However, we could even then furnish you with a copy of the tickets, or, if you so desired, 'phone you and give you this information.

"We want to assure you, however, that we would like to cooperate with you to the fullest extent, and are desirous of fulfilling your wishes in the matter.

"Trusting that we may hear from you favorably within the next few days, we are

    "Yours very truly,
            "T. T. Word Supply Company,
"MHA:WRS            By Treasurer."

"Exhibit 'C'

"August 19, 1930.

"Mr. E. J. Burke,
    "%Redland Hotel,
    "Nacogdoches, Texas.
"Dear Mr. Burke:

"Today Mr. Long 'phoned in an order from Garrison, Texas, for one Eccentric Hub and one Eccentric Yoke Strap complete for 10x10 Ideal Twin Engine. This particular type of engine, of course, is not handled by us, however, as you know, we have always taken care of all repair parts for Mr. Long, regardless of the make of the equipment, and in this case we bought this, and are shipping it today by prepaid express to Mr. Long at Garrison.

"We called your office here to get an approval of these supplies which total $102.45, however, we were informed that you would be gone for the balance of the week, therefore we are addressing this communication to you asking that you kindly approve this charge.

"There is also herewith attached a copy of a letter that we addressed to you at your Houston office, and really we believe that it will avoid inconvenience if you will authorize credit for a certain amount and would appreciate, therefore, your giving us your authority for a certain amount in writing immediately upon receipt of this letter.

"As above stated, we have forwarded this shipment so as to not cause any delay, and we trust you will appreciate our action in the matter.

    "Yours very truly,
            "T. T. Word Supply Co.
"MHA:WRS            By Treasurer.
"encl."

No statement of facts has been filed in this court.

From the judgment rendered the plaintiff has appealed.

The contention made by appellant for reversal of the judgment presents only one proposition which is, substantially, that the trial court, having found that the copartnership alleged by appellant, plaintiff in the lower court, did exist at the time Joe F. Long pur-

chased the items shown in the account sued upon from appellant, and having found that all the items were delivered *to* the well being drilled by E. J. Burke and Joe F. Long, he erred in holding that the notice given by Burke to appellant not to sell Joe Long anything and expect him (Burke) to pay for it, and that he would not be responsible for any such purchase unless he first "oked" the bill, limited Burke's liability to pay for such purchases only as were purchased before such notice was given and those "oked" or approved by him.

We overrule the contention. The evidence shows, and the trial court found, that on the same day that Burke gave the notice mentioned limiting his liability, appellant, the T. T. Word Supply Company, wrote to Burke acknowledging the receipt of such notice, and, in effect, agreed to be governed by the same, and in pursuance of such agreement got the O. K. or approval of Burke on several items which Long wanted, and by a letter addressed to Burke requested him to O. K. or approve the purchase of other items by Long, which request Burke refused. Notwithstanding such notice, agreement, and refusal, appellant thereafter, without the approval of Burke, sold and delivered to Long items of merchandise and charged the same to the alleged copartnership; such charge being the sum of $645.25.

The import of the agreement entered into between appellant and Burke is that appellant, after the receipt of the notice mentioned, would not sell and deliver to Long for the account of the partnership any articles of merchandise or material unless such sale was "oked" and approved by Burke.

Neither the statute relative to limited partnerships, nor the cases cited by appellant, have any application to the facts of the present case.

In R. C. L. vol. 20, p. 887, § 98, it is said: "A partner while remaining a member of a firm may place limitations on the authority of his copartner to bind him, either generally or as to particular transactions. Such restrictions and agreements are usually binding and enforceable by the courts. When a partner gives to a third person notice that he will not be bound by the acts of his copartner, this amounts to a notice that the implied agency has ceased, and such partner will then not be bound by a contract entered into by his copartner although the fruits of the contract have been enjoyed by the partnership of which he is a member."

In Dawson, Blakemore & Co. v. Elrod, 105 Ky. 624, 49 S. W. 465, 20 Ky. Law Rep. 1436, 88 Am. St. Rep. 320, the Court of Appeals of Kentucky held that "a partner is not liable for the price of goods sold to his co-partner over his protest, and after notice that he would not be bound therefor." The court said: "The effect of the notice, if given, must be to put the seller on notice that, if you sell over my protest, in no event will I be liable. This view is sustained by Monroe v. Conner, 15 Me. 178 [32 Am. Dec. 148]." See Bromley v. Elliot, 38 N. H. 287, 75 Am. Dec. 182; also, Dawson, Blakemore & Co. v. Elrod, 105 Ky. 624, 49 S. W. 465, 20 Ky. Law Rep. 1436, 88 Am. St. Rep. 320–322.

Having reached the conclusion that Burke's protest made to appellant was sufficient to limit his liability to the payment for the purchases which were sold and delivered prior to his protest and those made before such protest was made, it becomes our duty to affirm the judgment, and it is so ordered.

Affirmed.